UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CRIMINAL NO. 07-054(DRD) |
| Plaintiff, | * | |
| v. | * | |
| HECTOR O. RIVERA-FEBRES a.k.a. "BUBY" | * | |
| Defendant. | * | |

**OPINION AND ORDER**

BACKGROUND

The defendant, HECTOR O. RIVERA-FEBRES a.k.a. "BUBY," has requested the court to revisit the determination of the Magistrate Judge Camille L. Vélez-Rivé denying bail entered on February 22, 2007, (Docket No. 34). A request to vacate the detention was filed on September 10, 2007 (Docket No. 62) and a further request was entered on October 24, 2007, (Docket No. 72). The court held a hearing on October 29, 2007, (Docket No. 77). The court is ready to rule.

The court is required to perform a de novo review of the contested Detention Order. United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990).[1] The court also notes the illustrated opinion of District Judge Keeton in United States v. Philiphs, 732 F. Supp. 255, 2548-259 (D. Mass1990), requiring "the court to exercise independent consideration of all facts properly before it."

Defendant, Héctor O. Rivera Febres, hereinafter referred to as "Rivera-Febres" is currently charged with two counts. In Count One Rivera-Febres, in aiding and abetting form, is charged with maliciously destroying an apartment, by means of fire, within an

---

[1] The court shall provide a de novo review notwithstanding that the request is not in reality an appeal filed almost six months after the original bail was denied.

1

apartment complex, Jesús T. Piñero Public Housing in Canóvanas, P.R., Apartment 11, Building 22, possessed or used by or leased by United States Housing Urban Development Agency, an institution receiving Federal Finance Assistance, directly causing personal injury to a minor, burns to a minor (unnamed), using initials L.A.R.D., and creating risks of injury to others in violation of Title 18 §844(f)(1) and (f)(2) and § 2.

Defendant Rivera-Febres was charged also in Count Three with an identical charge, also in aiding and abetting fashion, of an arson in the same Public Housing Project, but a different apartment, Apartment 28, Building 26, creating a substantial risk to injury to Luz Nereida González Calzado and others. All in violation of Title 18 U.S.C. 844(f)(1), (f)(2) and §2, also during the date of on or about November 26 and 27, 2006.[2]

Magistrate Judge Vélez-Rivé found that the defendant was a danger to the community and a risk of flight since he was facing a grand jury determination charge wherein he was imputed conduct that constituted "a crime of violence . . . for which a term of imprisonment of ten or more years is prescribed" creating a rebuttable presumption of "danger to the community" and "flight risk." The Magistrate Judge determined that defendant failed to rebut the presumption, Docket No. 34.

## THE STANDARD

The Bail Reform Act of 1984, 18 U.S.C. 3141 et seq. at § 3142(f)(1)(a) and (e), sets forth a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the accused as required and the safety of the community if there is probable cause established via an indictment that the person committed a crime of violence calling for a sentence of "a maximum of ten or more years." 18 U.S.C. 3134(f)(1)(a). United Sates v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United

---

[2] Count Two of the indictment charging a brandishing of a destructive device under 18 U.S.C. 921(a)(4) was dismissed.

States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990).[3]  In the instant case the presumption has been triggered because arson is "a crime of violence" that carries a sentence of a maximum of ten years. United States v. Mitchell, 23 F.3d 1 (1st Cir. 1994) (arson is a crime of violence).[4]

The presumption has a "significant practical effect." United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985).[5] The presumption does not shift the burden of persuasion to the defendant, because the government retains the burden throughout. The defendant, however, once the presumption is triggered, is required to carry the burden of production. United States v. Jessup, 757 F.2d 380-384.

The presumption created is that ". . . it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense that constitutes "a crime of violence. . . for which a maximum term of imprisonment of ten years or more is prescribed."[6] The

---

[3] The cited cases of Dillon and O'Brien are both of presumptions created under the narcotics law, however, the statute activates the rebuttable presumption of "danger to the community" and "flight" under various criminal scenarios. 18 U.S.C. 3142(f)(1)(A), (B), (C) & (D).

[4] Counsel for defendant accepted that the sentence could be "of ten or more years", 18 U.S.C. 3142(f)(1)(a).

[5] In United States v. O'Brien, 895 F.2d at 814 the court abrogated Jessup as to the standard of appellate review. The First Circuit in O'Brien adopted the appellate standard of review enunciated in United States v. Bayko, 774 F.2d 516, 520 (1st Cir. 1985), "an independent review . . . tempered by deference to the district court's firsthand judgment of the situation" rather than the clearly erroneous or other highly deferential standard utilized in Jessup, 757 F.2d at 387-388, United States v. Fortna, 769 F.2d 243, 250 (5th Cir. 1985), United States v. Chimurenga, 760 F.2d 400, 405 (2nd Cir. 1985), and United States v. Williams, 753 F.2d 329, 333 (4th Cir. 1985).

O'Brien, however, reiterates and follows the standard of burden shifting, presumption and of preponderance of the evidence of Jessup stated herein applicable for bail determinations at District Court level, 895 F.2d at 815.

[6] The case of United States v. Jessup triggered the presumption based on the Controlled Substances Act including a sentence of ten or more years. The principle of law to rebut the instant crime is the same.

presumption created is therefore of "flight risk" and "danger" to the community. Jessup, 757 F.2d at 381.

Once the presumption is triggered, the defendant is required to produce "conflicting evidence" to undercut the legislative purpose of the presumption. United States v. Jessup, 753 F.2d 383. The defendant is required to produce "some evidence" to the contrary. United States v. O'Brien, 895 F.2d at 815. However, it is not merely any evidence that destroys the presumption since the "bursting bubble theory" was expressly rejected by them Chief of the First Circuit, now Supreme Court Justice, Steven Bryer, at United States v. Jessup, 757 F.2d at 382-383. The "intermediate position" adopted in Jessup requires defendant to produce "conflicting evidence" as to "danger" and "flight"[7] and then the court "determine[s] on which side the evidence preponderates." United States v. Jessup, 757 F.2d at 383 citing Wright v. State Accident Insurance Fund, 289 Or. 323, 613 P.2d 755,759-60 (1985).

The court in United States v. Jessup, Id., stated the following as to the method of "rebutting the presumption": "In order to 'rebut' the presumption, the defendant must produce some evidence. Even after a defendant has produced evidence to rebut the presumption [as to both danger to the community and risk of flight], "the presumption does not disappear, but rather retains evidentiary weight - the amount depending on how closely defendants' case resembles the Congressional paradigm, Jessup, 757 F.2d at 387 - to be considered with other relevant factors." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987).

Finally, in making its final determination after receiving the rebuttal pursuant to §3142 (g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the

---

[7] Jessup, 757 F.2d at 383 citing the theory of Hecht and Pinzler, Rebutting Presumptions: Order Out of Chaos, 58 B.U.L. Rev. 527 (1978); Jessup (Id.) states that "the House of Judiciary adopted this sort of 'intermediate position' . . .."

4

person including . . . character, physical and mental condition, family history . . . past conduct" and the "danger posed to the community" by his release. United States v. Jessup, Id.

At the de novo hearing both parties proceeded via a proffer as is expressly authorized under the case of United States v. Acevedo-Ramos, 755 F.2d 203, 208 (1st Cir. 1985)(court authorizing proceedings in bail hearings via proffer citing, The House Judiciary Committee H.R. No. 907, 91st Congress 2nd Session 182, 184 (1979)).  Counsel for the defendant strongly objected to the United States not producing any evidence. However, the law is clear, the court may authorize to "proceed primarily by way of proffer." Acevedo Ramos, 955 F.2d at 208 (citing Congressional intent). In this case the court was persuaded that producing a victim as a witness, who is a minor, of tender age, eleven years old, was not the best practice considering that a proffer is expressly authorized by Congress as an alternative.

As stated before, the instant case is governed by the presumption of detention set forth under the Bail Reform Act based on "a crime of violence," an arson, carrying a potential sentence which may be over ten (10) years in custody.  The court must, therefore, analyze the statutory factors required under the law. The court proceeds in **seriatim** fashion to examine the statutory criteria at 18 U.S.C.3142(g)(1),(2),(3),(4).

1. The Nature and Circumstances of the Offense. The defendant is charged in aiding and abetting fashion with arson and there is a victim who is a minor who suffered injuries. Further he is also charged with arson on that same date in aiding and abetting fashion as to another apartment in a separate building of the same Public Housing Complex. The United States proffered that the defendant aided and abetted by "participa[ting] by inciting  the act of violence to go even further." (Tr. Rough Draft,  p. 8-10.) The defendant was a member of a drug gang in the Housing Project and the victim (minor) had a brother who was a member of the same gang who snitched on his own gang

to members of a rival drug gang withing the same housing complex. Hence, the apartment of the mother of the victim became the subject of the arson. (Tr. Rough Draft, p. 43.) The defendant was present as others were lighting the apartment with fire crackers, he is yelling at the victims to abandon the apartment, insulting them, calling the mother a snitch as the other co-defendants at the same time are lighting the fire on the apartment. (Tr. Rough Draft, p. 44.) This criteria favors the detention of the defendant.

    2. <u>The Weight of the Evidence</u>. The mother of the minor victim will testify as to the arson directed against her condominium where she lived together with her two minor aged sons. She will further testify as to drug trafficking, within the public housing where she resided. She will admit that her oldest son belonged to a gang that distributed drugs and that defendant Rivera-Febres and the other defendants also belonged to that same drug gang. Defendant elder son then snitched to a rival gang also distributing drugs within the same Public Housing Complex. As a reprisal, the three defendants decided to burn the apartment of the mother wherein the traitor oldest son also resided, together with the youngest son. At 3:00 p.m. on November 20, 2006, two defendants threatened the mother and the oldest son. (Tr. Rough Draft, p. 43-44). (Defendant Rivera-Febres was not present.) Subsequently, at 1:00 a.m. on November 27, 2006 all four defendants including Rivera-Febres returned. Two defendants light fire crackers and other incendiary devices burning the victim's apartment and defendant, Rivera Febres, while the others also shouting are in the process of burning the apartment is present "inciting further the acts of these two defendants, he was yelling at the defendant [sic] [victims] to get out calling her a snitch."

    The weight of the evidence as to defendant Rivera-Febres as an aider and abetter is strong since drugs at public housing are common in Puerto Rico and rivalry between gangs to maintain and/or gain control of the Housing Project is not uncommon and further drugs distribution rivalry engenders acts of violence as is the crime of arson. The evidence

to comply with aiding and abetting is not required to be overwhelming as a matter of law. The court shall discuss infra the sufficiency to warrant a conviction under aiding and abetting under 18 U.S.C. 2. This criteria favors detention.

3. <u>The history and characteristics of the defendant.</u>  Counsel for the defense stresses in the original submittal, Motion to Vacate Order of Detention (Docket No. 62), that although defendant had been accused in state court of various crimes including distribution of controlled substances, on two separate distinct occasions, one was dismissed for lack of prosecution under Criminal Rule 64N(6)[8], and the other was dismissed at the prosecutor's request under Criminal Rule 247. He was also charged with attempted murder and possession of a weapon in another case. This case was dismissed due to lack of probable cause.

Notwithstanding, in the instant case the background of the case depicts a narcotic drug related reprisal against a minor, member of a drug gang, by other members of the same drug gang. Defendant Rivera Febres specifically was a member of the drug gang. Hence, the specter of drugs covers Rivera Febres notwithstanding counsel gallant efforts.

Further, the court agrees with the analysis of the pre-trial officer to deny bail. The defendant does not have a steady employment. He further has no strong family relationships since he is divorced and was then living in common law marriage with another young lady who testified on defendant's behalf stating that she had lived with him for barely eight months from May 11, 2006 to January 25, 2007. (Tr. Rough Draft, p. 25, 31.)  Prior thereto defendant lived with his father, a policeman, (the mother is deceased), and prior to that with his ex-wife.

Finally, the defendant could not produce an adequate custodian since both his current common law wife and his father (a policeman) work full time and can not be

---

[8] Dismissal because within sixty days of arrest the criminal charge was not seen at preliminary hearing stage.

effective custodians.

Because there is a good faith proffer that defendant is a member of a drug gang and further the arson crime is related to a drug distribution rivalry, and further the defendant has no strong family ties nor a steady employment, this criteria favors detention.

4. <u>The nature and gravity posed by the person's release.</u>  Defendant, notwithstanding counsel's effort to undermine his prior criminal accusations, all dismissed, none going to trial, is a drug dealer. It is unquestionable that the fire occurred and that the victim was only eleven years old. The circumstantial evidence seems to be strong that the alleged criminal conduct was motivated by a drug narcotic reprisal. Hence, the defendant is not only a drug dealer but also one "aiding and abetting" in an arson. Narcotic trafficking under the bail act "is encompassed within Congress definition of danger [to the community]." <u>United States v. De León</u>, 766 F.2d 77, 81 (2nd Cir. 1985). Arson constitutes "a crime of violence." <u>United States v. Mitchell</u>, 23 F.3d 1. Therefore, the court must conclude that this defendant, if released, represents a danger to the community.

Finally, the court recognizes that it expressed doubts about defendant having "intent" to incur in arson. However, a close analysis of the "aiding and abetting" dispositions under law, 18 U.S.C. 2, has caused the court to be relieved of its original concern. The court briefly explains.

The law succinctly states that "whoever commits an offense against the United States or **aids and abets**, counsels, commands, **induces** or procures its commission is punishable as a principal." 18 U.S.C.  (Emphasis ours.)

The instruction that the court is to provide following guidance by the First Circuit Court jurisprudence is the following:

> To "aid and abet" means intentionally to help someone else commit a crime.  To establish aiding and abetting, the government must prove beyond a reasonable doubt:
>
> First, that someone else committed [insert charged crime]; and

8

>   Second, that [defendant] consciously shared the other person's knowledge of [insert charged crime], intended to help [him/her], and took part in the endeavor, seeking to make it succeed.
>
>   [Defendant] need not perform the [insert charged crime], be present when it is performed, or be aware of the details of its execution to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of [insert charged crime] and knowledge that [insert charged crime] is being committed are also not sufficient to establish aiding and abetting. But you may consider these among other factors.

The instruction is based on United States v. Spinney, 65 F.3d 231, 234-235 (1st Cir. 1995) but as modified by United States v. Gerónimo, 330 F.3d 67, 75 (1st Cir. 2003) incorporating "specifically . . . the principal offense in the fashion of the Eight Circuit Pattern Instructions, rather than generally to "a crime."

Further, when aiding and abetting is involved the term "counsels, commands, induces or procures [2(a)] and cause [2(b)] language from §2 is properly part of the jury's instruction." United States v. Footman, 215 F.3d 145, 154 (1st Cir. 2000). The term "willfully" is also incorporated. In United States v. Loder, 23 F.3d 586 (1st Cir. 1994), the court stated that "the defendant [must] consciously share the principals knowledge of the underlying criminal act." Further, "the state of mind required for connection as an aider and abetter is the same state as required for the principal offense." Id. 680. But in United States v. Strauss, 443 F.2d 986, 988 (1st Cir 1971) the court stated that an aider and abetter "may be convicted under subsections [b] even though the individual who did in fact commit the substantive act lacked the criminal intent." Moreover, "a defendant may be convicted under this Section [2(b)] even though the individual who did in fact commit the substantive act lacked the necessary criminal intent." United States v. Dodd, 43 F.3d 759, 762 (1st Cir. 1995); see also United States v. Andrade, 135 F. 3d 104, 110 (1st Cir. 1998) (following United States v. Dodd). See further United States v. Sellers, 871 F. 2d 1019 (11th Cir. 1984) deciding that a government may charge an aider and abetter, an accomplice, as a principal even though all elements of the substantive offense would not be proven against

9

the substantive offender.

The court is aware that under <u>United States v. Spinney</u>, *mens rea and actus reus* most be proven as to an aider and abetter." <u>United States v. Rosario Díaz</u>, 202 F.3d 54, 63 (1st Cir. 2000). *Mens rea* constitutes "guilty mind" and actus reus is "guilty act" as defined in Black Law Dictionary, 7th Edition 1999, West Group. All of which is translated to criminal intent. Criminal intent is a matter for the jury to decide based on circumstantial evidence under the totality of evidence. The matter constitutes a subjective determination for the jury. <u>United States v. Greenfield</u>, 554 F.2s 179, 183 (5th Cir. 1977), cert. denied 439 U.S. 860 (1978) ("Necessarily, the issue of criminal intent or guilty knowledge *[mens rea and actus reus]* was a factual issue for the jury to resolve on the basis of circumstantial evidence under the totality of circumstances. It was a subjective determination.")

Finally, aiding and abetting under 18 U.S.C. 2(a) is satisfied by mere inducing its commission. <u>United States v. García Carrasquillo</u>, 483 F.3d 124, 131 (1st Cir. 2007) (referring to aiding and abetting within a drug violation case stating that ". . . a conviction for aiding and abetting [proceeds] if the surrounding circumstances lead to a reasonable inference that the defendant must have been a knowing participant," citing <u>United States v. Lema</u>, 909 F.2d 561, 570 (1st Cir. 1990).

Translated into the facts in this case the inquiry is whether a reasonable jury could find defendant Rivera Febres responsible under aiding and abetting under the totality of circumstances under a "subjective determination." Defendant Rivera Febres belonged to a drug gang wherein another member became a snitch, a traitor, by providing information to a rival gang. The traitor, also a youngster, lived with his mother and an eleven year old brother. Two members of the drug gang, not the defendant, visited originally the apartment of the snitch and threatened and coerced them. A few hours later, three members of the drug gang together with defendant, Rivera Febres, who is also a member of the gang, appeared again at the apartment. The three members shouted, threatened and proceeded

to throw fire crackers and other devices that lead to a fire that caused the injury to an eleven year old victim. The defendant, Rivera Febres, did not throw fire crackers but also insulted the victims shouting to them to leave the apartment and called the victims snitches ("chotas"), while at the same time the other members of the gang proceeded with the fire crackers leading to the fire. The legal issue is whether the defendant Rivera Febres taking into consideration the totality of all the circumstantial evidence acted having only a general suspicion of a crime or in mere presence or if he acted "as something he wished to bring about, and sought by his action to make it succeed," all under United States v. Ruiz, 105 F.3d 1492, 1499 (1st Cir. 1997) citing United States v. Loader, 23 F.3d 590-591. This court is of the opinion that considering the totality of circumstantial evidence[9], a reasonable jury, at least under an "inciting" theory of aiding and abetting could reasonably convict Rivera Febres of arson under 18 USC 2.

The defendant has failed to rebut the presumption of detention created by law under 18 U.S.C. 3142 (f)(1)(A) and (e). Further, defendant is to remain detained because

---

[9] Defendant Rivera Febres went to the scene of the crime at 1:00 a.m., the apartment of the victims, following the threatens made earlier to the victims by other co- defendants; he was also a member of the drug gang making the prior drug related threats and also shouted to the victims to leave the apartment as well as that they were traitors (snitches) precisely while the other co-defendants were participating in the arson.

11

the majority of the criteria analyzed under the Bail Reform Act, 18 U.S.C. 314(g)(1)(2)(3)(4) preponderate to detention making him a "danger to the community."[10]

IT IS SO ORDERED.

At San Juan, Puerto Rico, this 5th day of December 2007.

                                                            s/Daniel R. Domínguez
                                                            DANIEL R. DOMINGUEZ
                                                            U.S. DISTRICT JUDGE

---

[10] At a recent status conference counsel for defendant urged the court to proceed with the Bail Order notwithstanding that plea negotiations were ongoing because the client was covered by the presumption of innocence. The court disagrees as to the presumption of innocence being altered by a detention order. The Bail Reform Act succinctly states "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 USC 3142(j). Further, the presumption of law authorizing pre-trial detention in certain crimes was found to be constitutional in United States v. Salerno, 481 U.S. 739 (1987). In the ultimate analysis, as to bail pursuant to law, notwithstanding counsel's gallant effort, defendant is a member of a drug gang, participating via aiding and abetting in a "crime of violence," arson. Further the defendant has no steady family ties and does not have an adequate custodian and further acted in a reprisal relating to a drug point squabble.